Filed 1/16/25  P. v. Lee CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN AARON LEE,<br><br>    Defendant and Appellant. | G063125<br><br>(Super. Ct. No. 12WF1633)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2014, defendant Brian Aaron Lee pled guilty to one count of robbery, admitted the truth of a firearm enhancement, and also admitted to having several prior robbery convictions. He was sentenced to 20 years in prison. In 2021, the Secretary (the Secretary) for the Department of Corrections and Rehabilitation (the Department) recommended that Lee's sentence be recalled and that he be resentenced. Lee subsequently filed a motion for recall and resentencing under Penal Code section 1172.1, subdivision (a)(1).[1] The trial court denied the motion, finding Lee posed an unreasonable risk of danger to public safety. Lee appeals, arguing the court abused its discretion by failing to consider certain factors prior to denying his motion. We find no abuse of discretion and affirm the order.

FACTS AND PROCEDURAL HISTORY

In 2012, Lee committed an armed robbery of a jewelry store. Lee and an accomplice entered the store while the 72-year-old victim was working. They pretended to be customers and asked the victim where the store's diamonds were located. One of the perpetrators then grabbed the victim, pointed a gun at her, and said, "'This is a robbery. Don't scream.'" The other man bear hugged the victim from behind, dragged her to the rear of the store, and told her to lie down. Lee and the accomplice then used duct tape to cover the victim's eyes and mouth and to bind her wrists and ankles. After she had been bound, the victim "heard one of the suspects say, 'Take her purse so we know where she lives.'" The perpetrators then stole about $500,000 in jewelry. After they left, the victim was able to remove some of the tape, activate the store's silent alarm, and call 911. Lee and the accomplice were later arrested for the robbery.

---

[1] All further undesignated statutory references are to the Penal Code.

2

The prosecution filed an information charging Lee with one count of second degree robbery under sections 211 and 212.5, subdivision (c). The information alleged Lee had been armed with a firearm during the commission of the robbery. (§ 12022, subd. (a)(1).) It also alleged Lee had prior convictions for (1) robbery (§ 211) and attempted robbery (§§ 211, 664) in April 1993; (2) robbery (§ 211) in February 1996; and (3) robbery (§ 211) in April 1996. The information asserted these prior convictions qualified as strike priors (§§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)) and prior serious felonies (§ 667, subd. (a)(1)). Finally, it alleged Lee had served two prison terms in April 1993 and February 1996. (§ 667.5, subd. (b).)

In May 2014, Lee pled guilty to the robbery count, admitted the firearm enhancement, and admitted all prior convictions. He was sentenced to a total of 20 years, comprised of (1) a two-year low term for the robbery count, which was doubled to four years due to the prior strike; (2) one year for the gun enhancement; and (3) five years for each of the three serious felony priors. The trial court struck two of the strike priors and all of the prior prison term allegations.

In April 2023, the trial court filed a letter (the letter) from the Secretary dated January 27, 2021. The letter recommended recalling Lee's sentence and resentencing him under former section 1170, subdivision (d)(1) (now codified as section 1172.1, subdivision (a)). The letter explained Lee had a high risk of suffering serious complications if he contracted COVID-19. It further stated Lee had received only two disciplinary infractions during his current term of incarceration, had maintained steady employment, and had engaged in positive activities, such as mental health treatment. Based on the letter, Lee filed a motion (the motion) for recall of his sentence and

resentencing under section 1172.1, subdivision (a)(1), which the prosecution opposed.

Following a hearing, the trial court denied the motion and refused to recall Lee's sentence. The court recognized the weight of the Secretary's recommendation. But it concluded that "[i]n any case, [Lee's] history is so bad, his current offense is so objectionable and offensive and such a problem for the community that this Court would absolutely not consider releasing him pursuant to this letter. I wouldn't consider resentencing him at all. And I will absolutely find that he is—it's reasonably likely that he would commit a super strike [(§ 667, subd. (e)(2)(C)(iv))]. [¶] Fifty is not young [(Lee's age at the time of the hearing)], but it certainly is not at a point where he's aged out of the system. He has a 30-year, a rich 30-year resume of robberies and strikes and trips to prison. These violations should be noted. Three violations is—granted,[2] when you juxtapose it against 3,000 days, percentage-wise it doesn't seem like much, but this Court is very concerned with the violations that he's amassed along the way in terms of risk to the community and rehabilitation. . . . [¶] Simply put, the Court will not resentence him and the petition is denied."

On appeal, Lee contends the trial court abused its discretion in denying the motion. We find no error.

DISCUSSION

"When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary . . . , the court may, on its own motion, . . . at any time upon the recommendation of the secretary . . . , recall the sentence and commitment previously ordered and resentence the

_____

[2] Lee had a third disciplinary infraction in May 2021, after the Secretary had sent the letter.

4

defendant in the same manner as if they had not previously been sentenced . . . ." (§ 1172.1, subd. (a)(1).)

In analyzing a request to recall and resentence under section 1172.1, subdivision (a)(5), "the court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

Further, if the request for resentencing is made by the Secretary, "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1. subd. (b)(2).) An "'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The felonies listed in section 667, subdivision (e)(2)(C)(iv), are so called "super-strike" offenses. They include, among others, sexually violent crimes, sex crimes against children, homicide offenses, solicitation to commit murder, and other serious or violent felony offenses punishable by life imprisonment or death. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 818, fn. 5; § 667, subd. (e)(2)(C)(iv).)

A trial court's denial of a request for recall and resentencing under section 1172.1, subdivision (a), is reviewed for an abuse of discretion. (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.) "The abuse of discretion

standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

Here, Lee claims the trial court abused its discretion by concentrating solely on his criminal history and ignoring his positive behavior and accomplishments during his current incarceration.

"On appeal, we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Thus, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) Likewise, "'[t]he court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.' [Citation.] 'Thus, the fact that the court focused its explanatory comments on [one factor] does not mean that it considered only that factor.'" (*People v. Allen* (2019) 41 Cal.App.5th 312, 330.)

Based on the above authority, we must presume the trial court followed the relevant law and considered all the relevant factors. Indeed, Lee's positive behavior during incarceration was raised several times during the proceedings. Lee's motion stated that the Secretary had engaged in an extensive vetting process, and only a small percentage of prison inmates who were considered safe were chosen for resentencing. The motion also asserted that Lee had renounced his former gang, largely obeyed prison rules, reduced

his risk score for housing security, obtained a low recidivism risk score, attended mental health treatment, and maintained steady employment. Lee cited this evidence again during the hearing on the motion and specifically asked the court to consider it and other postconviction factors.

We have not been cited any evidence indicating the trial court ignored the above evidence. Rather, the record indicates the court did consider evidence of Lee's positive behavior. Prior to giving its ruling, the court "acknowledge[d] that . . . [Lee's] moving papers [stated] . . . some 1200 people out of tens of thousands of inmates had gotten the [Department] to author a letter of this type to the sentencing Court. So I will acknowledge that, and I will also acknowledge [Lee's] many health issues." The court then stated, "In any case, [Lee's] history is so bad, his current offense is so objectionable and offensive and such a problem for the community that this Court would absolutely not consider releasing him pursuant to this letter."

In the above statements, the trial court expressly acknowledges some of the arguments made in Lee's motion. Thus, we can reasonably infer the court considered all of Lee's arguments concerning his positive behavior but found they were outweighed by his criminal history. And even if the court had not addressed any of Lee's arguments directly, absent evidence to the contrary, we must presume the court considered them but simply chose to focus on Lee's criminal history when providing its ruling. (See *People v. Allen*,

*supra,* 41 Cal.App.5th at p. 330.) Simply put, Lee has failed to rebut the presumption that the court's order is correct.[3]

## DISPOSITION

The order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

---

[3] Lee has not argued that there is insufficient evidence to support the trial court's finding that he was reasonably likely to commit a super strike. (§ 667, subd. (e)(2)(C)(iv).) Rather, he only argues the court abused its discretion by failing to consider his positive behavior during incarceration. As such, we will not review whether the court's super-strike finding is supported by substantial evidence.